FILED IN
COURT OF CRIMINAL APPEALS

JANUARY 16, 2015

ABEL ACOSTA, CLERK

PD-1378-14

PD-1378-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/7/2015 11:20:21 AM
Accepted 1/16/2015 1:56:23 PM
ABEL ACOSTA
CLERK

No. _____

IN THE

COURT OF CRIMINAL APPEALS

FOR THE STATE OF TEXAS
AT AUSTIN, TEXAS

KEVEN ALVINO YOUNG, SR.

APPELLANT,

V.

THE STATE OF TEXAS,
APPELLEE

APPELLANT'S
PETITION FOR DISCRETIONARY REVIEW

**NO. 02-13-00032-CR**
COURT OF APPEALS
FOR THE SECOND DISTRICT OF TEXAS
AT FORT WORTH, TEXAS

On appeal from Cause Number F-2011-0122-D
in the 362nd Judicial District Court of Denton County, Texas
Honorable Bruce McFarling, Judge Presiding

STEPHEN WOHR

ATTORNEY FOR APPELLANT

APPELLANT REQUESTS ORAL ARGUMENT

## LIST OF NAMES AND ADDRESSES

Mr. Michael Graves, Assistant District Attorney
and
Mr. Rick Daniel, Assistant District Attorney
Denton County Courts Building
1450 E. McKinney, Suite 3100
Denton, Texas 76209

Paul Johnson/Charles Orbison,
Criminal District Attorney
Appellate Division
1450 E. McKinney
Third Floor, Denton, Texas 76209

Mr. Keven Young
TDCJ # 1846840
M. Skles Unit
3060 FM 3514
Beaumont, Texas 77705

Mr. Mr. Carlton Hughes
401 Corporate Drive, Suite 100
Lewisville, Texas 75057

Ms. Debra H. Jones
419 S. Carroll, Suite 200
Denton, Texas 76201
Appellant's Trial Attorneys

Mr. Stephen Wohr
Attorney for Appellant
1417 E. McKinney, Ste. 100
Denton, Texas 76209

Court of Criminal Appeals
P.O. Box 12308
Austin, Texas 78711

# TABLE OF CONTENTS

IDENTIFY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REASONS FOR REVIEW: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-8

PRAYER FOR RELIEF: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Keven Young v. State*, No.02-13-00032-CR (Tex. App.–Fort Worth, delivered August 29, 2014)(unpublished).

INDEX OF AUTHORITIES

## CASE LAW

*Autry v. State*, 626 S.W.2d 758 (Tex. Crim App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Burnett v. State*, 179 S.W.3d 18 (Tex. App.-San Antonio 2005, no pet.) . . . . . . . . . . . . . . . . . 7

*Easley v. State*, 564 S.W.2d 742 (Tex. Crim. App. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Givens v. State*, 26 S.W.2d 739 (Tex. App. - Austin 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Gomez v. State*, 183 S.W.3d 86 (Tex. App.--Tyler 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . 7

*Hopper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jackson v. Virginia*, 433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed2d 560 (1979) . . . . . . . . . . . . . . 3 & 6

*King v. State*, 638 S.W.2d 903 (Tex. Crim. App. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McKinney v. State*, 177 S.W.3d 186 (Tex. App.--Houston [1st. Dist.] 2005, aff'd on
other grounds, 207 S.W.3d 366 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miller v. State*, 177 S.W.3d 177 (Tex. App.--Houston [1st. Dist.] 2005, no pet.) . . . . . . . . . . . 7

*Moff v. State*, 131 S.W.3d 485 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mueshler v. State*, 178 S.W.3d 151 (Tex. App.--Houston [1st. Dist.] 2005, pet ref'd) . . . . . . . . 7

*Scott v. State*, 165 S.W.3d 27 (Tex. App.--Austin 2005, pet granted) . . . . . . . . . . . . . . . . . . . . 7

*Thomas v. State*, 735 S.W.2d 688 (Tex. Crim App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Vodochodsky v. State*, 158 S.W.3d 502 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . 7

*Watson v. State*, 204 S.W.3d 404 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*West v. State*, 121 S.W.3d 95 (Tex. App.--Fort Worth 2003, pet ref'd) . . . . . . . . . . . . . . . . . . . 7

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wright v. State*, 603 S.W.2d 838 (Tex. Crim. App. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Yarborough v. State*, 178 S.W.3d 895 (Tex. App.--Texarkana 2005, pet ref'd) . . . . . . . . . . . . . . 7

*Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## TREATISES

Wharton's Criminal Evidence, 15th Ed. § 2:3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES

TEX. R. APP. PRO. 68.1, *et seq* (generally) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TEX. R. APP. P. (general) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS**

NOW COMES, Keven Young, Appellant in this cause, by and through his attorney of record, Stephen Wohr, and, pursuant to the provisions of TEX. R. APP. PRO. 66, *et seq.*, moves this Court to grant discretionary review, and in support will show as follows:

## I. STATEMENT REGARDING ORAL ARGUMENT

Appellant has raised important questions in this Court and believes that oral argument would help clarify the issues presented in his petition for discretionary review.

## II. STATEMENT OF THE CASE

This case involves a murder charge wherein one of the two witnesses was the only one with Gun Shot Residue (GSR) on her body. Sisters, Ebony Chandler and LaShondra Chandler testified that they did not see the shot fired. However, they claimed that Keven Young, the father of Ebony Chandler's children confronted Desmond Poe and he went into the house with Ebony Chandler. After Desmond Poe returned to the garage where Keven Young and LaShondra Chandler were talking, according to the sisters, Keven Young pulled out a pistol and shot Desmond Poe and then left the scene.

Police Officers searched the garage, finding a slug in the wall. However, the police never searched the home for the murder weapon and in fact did not find the murder weapon, nor did they find GSR on Keven Young. The police did find GSR on Ebony Chandler. Keven Young's vehicle was located, however no one checked the vehicle for GSR. The case was built upon the testimony of the sisters and no other evidence. Ebony Chandler admitted that she was not happy with Keven Young regarding issues related to their children.

On the 14th day of January in the 362nd Judicial District Court of Denton County, Texas,

1

Honorable Bruce McFarling, Judge Presiding, the case of the State of Texas v. Keven Young was called to Jury Trial. The Prosecuting Attorney was Mr. Michael Graves and Mr. Rick Daniel and the Appellant was represented at trial by Mr. Carlton Hughes. A record of the proceedings was made by recording and transcribed by Ms. Molly Bowers, RDR, CRR. **(Court Reporter's Record, Vol. 1 of 6, Pg. 16, L. 16-21).**

The trial was held on capital murder.

The trial by Jury proceeded, and on January 17, 2013, Appellant was convicted on a plea of "Not Guilty" by the murder a lesser included offense of that in the indictment. **(Reporter's Record Vol. 5 of 6, Pg. 5, L. 13-16).** After the close of the punishment phase of the trial, the jury assessed punishment at confinement for life in the Texas Department of Criminal Justice with a $10,000.00 fine. **(Reporter's Record Vol. 5 of 6, Pg. 51, L. 10-21).** On January 17, 2013, after the jury was excused, the Honorable Bruce McFarling pronounced sentence of confinement for life in the Texas Department of Criminal Justice and a fine of $10,000.00. **(Reporter's Record, Vol. 5 of 6, Pg. 53, L. 9-15).**

## III. STATEMENT OF PROCEDURAL HISTORY

Appellate presented one issues in his appellant brief. The conviction was affirmed in an opinion that was not designated for publication, delivered on August 29, 2014. (See Appendix). Motion for Rehearing and Reconsideration En Banc was filed and denied on October 21, 2014. This petition is due to be filed on October 29, 2014.

## IV. GROUNDS FOR REVIEW

**THE EVIDENCE IS FACTUALLY INSUFFICIENT TO SUPPORT THE JURY'S CONVICTION FOR MURDER.**

2

## V. REASONS FOR REVIEW

The evidence presented by the State in Keven Young's case was insufficient. The burden of proof is on the State to present sufficient evidence and that right can not be waived or forfeited. *Givens v. State*, 26 S.W.2d 739, 741 (Tex. App. - Austin 2000) (cites omitted). "The test for legal sufficiency of the evidence is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* (cites omitted). The prosecution has the burden of production and the burden of persuasion on the question of guilt and the standard is "beyond a reasonable doubt". *Jackson v. Virgina*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In this case, there is indeed missing information or alternatively, mis-information. The State built its case around two witnesses Ebony Chandler and her sister LaShondra Chandler. The Chandler sisters stories are basically contradictory. Ebony Chandler and Appellant, Keven Young had two children together. **(Reporter's Record, Vol. 3 of 6, Pg. 48, L. 3-5)**. Ebony Chandler lived with her children and sister. **(Reporter's Record, Vol. 3 of 6, Pg. 47, L. 1-11; Pg. 49, L. 12-14)**. Ebony Chandler testified that she had spoken to Keven Young earlier in the day and that she told him she would call him around 3:00 but she did not call him because "she thought that he would just probably come over to get the kids". **(Reporter's Record, Vol. 3 of 6, Pg. 51, L. 22-25 through Pg. 53, L. 13)**. Later, Ebony Chandler testified that "[i]f we made an arrangement for him to be at that certain time, he would just pop up". **(Reporter's Record, Vol. 3 of 6, Pg. 84, L. 4-12)**.

Ebony Chandler had a rocky relationship with Keven Young but testified that it was basically an amicable relationship. This is contradictory to her testimony regarding the reason she knew Keven Young's license plate number, allegedly to provided it to the police because of the fights they

3

had. **(Reporter's Record, Vol. 3 of 6, Pg. 92, L. 2-5).**

Ebony Chandler testified that she initially locked the door between the garage and the house after the shooting but then opened it to let her sister back into the house and after opening the door went out to her van to get her cellular phone. **(Reporter's Record, Vol. 3 of 6, Pg. 95, L. 18-25 through Pg. 96, Ln. 1-13).** This was despite the fact that her sister had a working cellular phone in the house. **(Reporter's Record, Vol. 3 of 6, Pg. 95, L. 18-25 through Pg. 96, Ln. 1-13).**

Ebony Chandler testified that the weapon she saw Keven Young with was silver while LaShondra Chandler testified that the weapon was black. **(Reporter's Record, Vol. 3 of 6, Pg. 66, L. 1-3)(Reporter's Record, Vol. 3 of 6, Pg. 82, L. 4-10)(Reporter's Record, Vol. 3 of 6, Pg. 134, L. 21-25 through Pg. 135, L. 1; Pg. 138, L. 7-12).** One sister testified that she saw Keven Young with the gun in his left hand, the other testified that he had it in his right hand. **(Reporter's Record, Vol. 3 of 6, Pg. 71, L. 24-25 through Pg. 72, L. 1; Pg. 82, L. 11-21; Pg. 135, L. 14-25 through P. 136, L. 1).** However, neither sister testified that they saw Keven Young shoot a gun. **(Reporter's Record, Vol. 3 of 6, Pg. 137, L. 4-5; Pg. 137, L. 4-5).**

The officers investigating the offense never looked pasted Keven Young to determine if there were other potential suspects or only superficially looked at other suspects. The investigation was flawed in several aspects. First, the only individual with Gun Shot Residue (GSR) on the person was Ebony Chandler. **(Reporter's Record, Vol. 4 of 6, Pg. 87, L. 10-19).** The GSR found on Ebony Chandler did not prove or disprove she fired a weapon but there was still no search of the home. **(Reporter's Record, Vol. 4 of 6, Pg. 94, L. 4-25 through Pg. 95, L. 1-6).**

Additionally, although Keven Young's vehicle was found while the crime scene investigators were still working the crime scene, the vehicle was not tested for GSR. **(Reporter's Record, Vol.**

4

4 of 6, Pg. 21, L. 2-25 through Pg. 22, L. 1-19; Pg. 23, L. 16-22). (Reporter's Record, Vol. 4 of 6, Pg. 44, L. 10-24)( Reporter's Record, Vol. 4, or 6, Pg. 54, L. 18-25 through Pg. 55, L. 1-9). Detective Teniente testified that GSR will stay on a surface four to five hours and then come off with typical activity. **(Reporter's Record, Vol. 4 of 6, Pg. 65, L. 11-21).**

Second, the investigating officers never searched the home for a weapon or shell casings. **(Reporter's Record, Vol. 3 of 6, Pg. 188, L. 6-16; Vol. 4, or 6, Pg. 47, L. 14-25 through P. 48, L. 1-4).** There were no shell casings found in the house or the vehicle belonging to Keven Young. **(Reporter's Record, Vol. 4 of 6, Pg. 23, L. 18-25 through Pg. 24, L. 1-6).** Third, the officers did not search the house for evidence that either sister might have changed clothes and showered after the murder.

Fourth, Detective Teniente testified that no one ever issued a subpoena for Keven Young's cellular phone records. **(Reporter's Record, Vol. 4 of 6, Pg. 66, L. 20-25 through Pg. 77, L. 1-14).**

## ARGUMENT

In order to prevail in a criminal case, the State must prove beyond a reasonable doubt that the defendant committed the offense for which he/she stands accused. *See, Wharton's Criminal Evidence* § 2.3. In the instant case, the State did not meet its burden of proof. Instead, the State overwhelmed the jury with circumstantial evidence but nothing that was substantial. The two witness who accused Keven Young of the murder of Desmond Poe were sisters. There were clearly issues between Keven Young and Ebony Chandler. The sisters stories were contradictory as set out above. In a circumstantial case, "evidence must exclude every reasonable hypothesis except the guilt of appellant. *Wright v. State*, 603 S.W.2d 838, 839 (Tex. Crim. App. 1979) (*citing, Easley v. State*, 564 S.W.2d 742 (Tex. Crim. App. 1978). Adopting the standard of review in *Jackson v. Virginia*,

5

the *Moff* Court found that the court "*must consider all evidence* which the jury was permitted, whether rightly or wrongly, to consider". *Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004) (*citing, Jackson v. Virginia*, 433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed2d 560 (1979). Further, the *Moff* Court found the method by which the State proved an element of the offense was deficient or defective. However, an "appellate court must consider *all* evidence actually admitted at trial in its sufficiency review and give it whatever weight and probative value it could rationally convey to a jury". *Id.* at 489 (*citing, Thomas v. State*, 735 S.W.2d 688, 695 (Tex. Crim App. 1988). The *Moff* Court found that the question that an appellant is entitled to have answered is whether any rational jury could have found beyond a reasonable doubt, from all the evidence admitted in the light most favorable to the State, that the appellant committed the offense as charged. *Id.* at 492.

The *Zuniga* Court delineated the precise standard of review for factual insufficiency questions, including, linking the burden of proof at trial to the standard of review and avoiding language suggestive of preponderance of the evidence burden of proof. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). Further, after *Zuniga*, the *Watson* Court held that the "evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond a reasonable doubt standard". *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (holding that *Zungia* was flawed). In the case at issue herein, the burden of proof was clearly on the State, but the State also was in control of the evidence. They were also in control of what evidence was collected and what evidence it chose to ignore through its agents, the investigating officers.

If evidence is both supporting and contradicting the verdict, and the contrary evidence is so strong that guilt can not be proven beyond a reasonable doubt, then the evidence is factually

6

There was no investigation as to whether GSR was in the vehicle driven by Keven Young. There was no investigation or search of the home of the Chandler sisters for evidence of a cover up, including whether they had bathed, whether they had the murder weapon or anyother important piece of evidence. No one ever searched for evidence of other potential offenders in this case. What the State and its agencies did was to place the burden of proof on Keven Young. Keven Young was faced with the task of proving himself innocent. This is a burden that is not required and this Honorable Court should send a message to the State and her agents that it will not tolerate such insufficient evidence.

In *Winfrey*, the Court found that a "conclusion reached by speculation . . . is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 772 (Tex. Crim. App. 2013) (*citing Hopper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). The evidence presented by the State centered around the testimony of the Chandler sisters. There is no independent evidence that connected Keven Young to the murder. "*Proof amounting only to strong suspicion or mere probability is insufficient*". *King v. State*, 638 S.W.2d 903, 904 (Tex. Crim. App. 1982)(*citing, Autry v. State*, 626 S.W.2d 758 (Tex. Crim App. 1982). As in the *King* case, "the evidence that the shooting may have been committed by another person is not out of harmony with the evidence". *Id.* The State failed to hold up its duty to throughly investigate a crime through its agents. The evidence which was not collected or even searched for leaves a stunning gap in the State's case. It is sad when the State does not do more to protect the rights of every citizens of this State but instead allows its agents to rush to judgment and fails to hold its agents to the task of investigating its case throughly and with complete candor toward insuring that no innocent citizen will be incarcerated for an offense which he/she did not commit.

8

insufficient to support the verdict. *Mueshler v. State*, 178 S.W.3d 151, 157 (Tex. App.--Houston [1st. Dist.] 2005, pet ref'd); *Burnett v. State*, 179 S.W.3d 18, 25 (Tex. App.-San Antonio 2005, no pet.). Further, upon challenge of a verdict premised on factual sufficiency of the evidence to support a conviction, the appellate court should review the evidence in a neutral light and ask whether the State's evidence alone can support proof of guilt, if enough to prove guilt, taken alone, is it against the great weight and preponderance of evidence. *Miller v. State*, 177 S.W.3d 177, 183 (Tex. App.--Houston [1st. Dist.] 2005, no pet.). Courts addressing factual insufficiency of evidence must examine all evidence closely. Not only the evidence that tends to prove the appellate's guilt but also that which negates it. *Gomez v. State*, 183 S.W.3d 86, 88-89 (Tex. App.--Tyler 2005, no pet.); *Yarborough v. State*, 178 S.W.3d 895, 904 (Tex. App.--Texarkana 2005, pet ref'd); *McKinney v. State*, 177 S.W.3d 186, 191 (Tex. App.--Houston [1st. Dist.] 2005, aff'd on other grounds, 207 S.W.3d 366 (Tex. Crim. App. 2006). In examining the case, the courts should review not only the testimony of witnesses for the defense but should also examine alternative hypothesis. *See, Scott v. State*, 165 S.W.3d 27, 39 (Tex. App.--Austin 2005, pet granted); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.--Fort Worth 2003, pet ref'd). Finally, the reviewing court is authorized to disagree with the jury determination. *Vodochodsky v. State*, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005).

In this case, none of the circumstantial evidence, separately or cumulatively, rise to the level of beyond a mere speculation. The evidence is basically inconclusive because the investigators who were charged with throughly investigating the offense, believed the Chandler sisters story and looked no further. This could have been avoided had the investigating officers and detectives done their job. This was nothing more than a rush to convict Keven Young. There was no investigation into the telephone records of Keven Young, which the officers could have obtained very easily by subpoena.

7

## PRAYER FOR RELIEF

WHEREIN, PREMISES CONSIDERED, Appellant respectfully prays that this Court grant discretionary review and, after full briefing on the merits, issue an opinion reversing the court of appeals judgment and remanding the cause to the trial court for a new trial.

Respectfully submitted by:

_____
Stephen Wohr
State Bar No. 21844250
and
Katy R. Klinke
State Bar No. 00784406
Attorneys for Appellant
1417 E. McKinney, Suite 110
Denton, Texas 76209
(940) 382-4166

## CERTIFICATE OF SERVICE

I hereby certify, by affixing my signature above that a true and correct copy of the foregoing *Petition for Discretionary Review*, was mailed through the U.S. Postal Service to the Office of Paul Johnson, Criminal District Attorney, Denton County Courts Bldg., 1450 East McKinney, Denton, Texas 76209 this ___ day of December, 2014.

_____
Stephen Wohr

## CERTIFICATE OF WORD COUNT

I certify that according to the computer generated word court the Petition for Discretionary Review in the cause entitled "*Keven Young v. The State of Texas*"; Cause No. 02-13-00032-CR, the word count is 3,345.

_____
Katy R. Klinke

## APPENDIX

*Keven Young v. State*, No.02-13-00032-CR (Tex. App.–Fort Worth, delivered August 29, 2014)(unpublished).

# APPENDIX



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00032-CR

| | | |
|---|---|---|
| Keven Young | § | From the 362nd District Court |
| | § | of Denton County (F-2011-0122-D) |
| v. | § | August 29, 2014 |
| | § | Opinion by Justice Gardner |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By /s/ Anne Gardner
        Justice Anne Gardner



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00032-CR

KEVEN YOUNG                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

---------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2011-0122-D

---------

## MEMORANDUM OPINION[1]

---------

### Introduction

In a single point, Appellant Keven Young challenges the sufficiency of the

evidence to support his conviction for murder.[2] We affirm.

---

[1]See Tex. R. App. P. 47.4.

[2]In the Summary of the Argument section of his brief, Appellant alleges
ineffective assistance of counsel. Appellant did not raise this argument as a
separate point or provide us with any argument with citations to the record and to

## Background

Ebony Chandler and Appellant had an off-and-on relationship between 2004 and 2008 that produced two of Ebony's four children. There was no court order addressing custody; whenever Appellant wanted to see his children he usually picked them up at Ebony's house, where she and the children lived with her sister, LaShondra. Ebony was on her way to watch her cousin play football one morning when Appellant called about picking up his kids. She told him that she would call him back later that afternoon around 3:00 p.m.

Desmond Poe, his fiancée Tashanna Darby, and her nine-year-old son also went to the football field that day because Tashanna's son had a game in the morning, and they usually made a day of it, watching the other games. Tashanna, who was pregnant, went home early. Ebony knew Desmond as a friend of her aunt's boyfriend. When she ran into Desmond at the game, they exchanged pleasantries and telephone numbers. After they parted that day, Desmond called her a couple of times, asking to see her, and she agreed.

Desmond took Tashanna's son home a couple of hours after she left. As Tashanna helped her son clean up, Desmond told her that he was going out to shoot pool. Desmond arrived at Ebony's home around 9:30 p.m. and helped her

---

legal authority to support it. *See* Tex. R. App. P. 38.1(f), (i). Conclusory statements unsupported by argument or citation to legal authority present nothing for this court to review. *See King v. State*, 17 S.W.3d 7, 23 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Thus, we only address Appellant's complaint regarding the sufficiency of the evidence.

2

with some household chores before they retired to the garage to visit and to drink alcohol. Desmond also smoked marihuana.

Appellant called Ebony at 10:51 p.m. and again at 10:59 p.m. She ignored the calls, but after noticing that her cell phone needed charging, she plugged it into her van, which was parked outside the garage. About five minutes later, Ebony saw Appellant's truck pass through the alley behind her garage, turn around in a neighbor's driveway, and park in the alley facing Ebony's garage door. He climbed out, approached her and Desmond, and asked why she had not answered his calls. Ebony replied that he was supposed to have been there earlier that afternoon and that it was now too late. Appellant insulted her and Desmond. Desmond asked Appellant to leave him out of anything between Appellant and Ebony.

Ebony warned Appellant that she would call the police if he did not leave. Appellant lifted his shirt, revealing a handgun. Ebony grabbed Desmond and urged him to go inside. When he refused, she positioned herself between the two men and called for her sister's help.

LaShondra had been asleep in her room and initially ignored Ebony's calls for help. As they continued, however, she roused herself, went to the garage, took hold of Appellant, and tried to reason with him. Ebony convinced Desmond to go inside the house. LaShondra tried telling Appellant that he could talk to Ebony later and that his children were awake inside the house.

3

Because Ebony did not have a landline in her house and her cell phone was charging in her van, she asked Desmond if she could use his cell phone to call the police. He refused and said that he was going home and that Ebony needed to work out her problems with Appellant. Ebony pleaded with Desmond not to go outside because Appellant had a gun. He replied that he was not afraid, and he moved Ebony out of the way and walked toward the garage where he had parked his car.

LaShondra had just convinced Appellant to leave as Desmond stepped into the garage and called him a derogatory name. Appellant told her to move, and she bent down behind her truck, which was also parked in the garage, and covered her ears. Ebony saw Appellant raise his hand with a gun as Desmond walked toward the garage. Then, her six-year-old called her name. She turned and pulled the child back into the house as she heard a gunshot. From behind her truck, LaShondra also heard the gunshot.

As Appellant walked past LaShondra towards his own truck, he told her to tell Ebony "to love that n****r now." When he reached his truck, he climbed in and left. Ebony closed and locked the door from the house to the garage and ordered her children to their rooms. LaShondra saw Desmond lying dead in the garage, knocked on the locked door to the house, and asked Ebony to let her in.

A few minutes later, Ebony entered the garage, walked past Desmond's body, and fetched her cell phone from her van. She then closed the garage door and went back into the house. She called 911 sometime around 11:30 p.m.

4

and reported that her children's father had come over and shot a man named Desmond in her garage and that Desmond was dead.

After police officers arrived, Ebony, LaShondra, and the children waited outside while the officers searched the home and found Desmond in the garage, "clearly dead." No weapon was found. Officers transported Ebony and LaShondra to the police station, where they each provided a statement. Ebony's cell phone had received a text message from Appellant's phone at 11:32 p.m. that stated, "U so fake but ok, u wanna go 2 war lets war. U and him will lose, bet that."

Deanica Brown and Appellant had dated for three to four months before the shooting. She was scheduled to work at Applebee's that day. Appellant had dropped her off at work and promised to pick her up at around 11:30 p.m. to midnight when her shift ended. Appellant did not pick up her up that night and did not answer her calls. Later that night, he called her and said, "I'm sorry; I'm sorry; I love you; I'm sorry."

Officers located Appellant's truck in the early morning hours but did not recover any firearms or shell casings. The bullet that killed Desmond was found embedded in a garage wall and was recovered. Based on the firearms examiner's determination, the bullet had been fired from a revolver, which would have retained the shell casing, rather than discharging it from the weapon. The medical examiner found that the cause of Desmond's death was a gunshot wound to the head and that the manner of death was homicide. A jury found

5

Appellant guilty of murder and assessed a life sentence. The trial court sentenced Appellant accordingly.

## Sufficiency of the Evidence

Appellant contends that the evidence is insufficient to prove that he was guilty of murder. Specifically, he claims that the State's evidence is speculative because the investigating officers failed to conduct a thorough investigation of the murder scene, investigate all possible suspects, test Appellant's vehicle for gunshot residue, investigate Appellant's phone records, or address contradictions between the sisters' testimony.

In our due process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we

may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits murder when he (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1), (2) (West 2011). A person acts intentionally when he has a conscious desire to cause the result of his conduct. *Id.* § 6.03(a). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person's knowledge and intent may be inferred from his "acts, words, and conduct." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *see Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

7

The State introduced evidence that Desmond was found dead, lying face down on the floor of Ebony's garage from a single gunshot wound to the left side of his head. Ebony testified that Appellant was upset when he arrived at her home, insulted Desmond after seeing him at her house, and flashed a gun after she warned him that she would call the police if he did not leave. LaShondra testified that she saw Appellant at the house that evening, witnessed him putting his hand on his shirt when Desmond walked out into the garage and exchanged words with him, and was outside and took cover when Appellant told her to move before Desmond was shot. Both women testified that they heard one gunshot, and LaShondra testified that as Appellant was leaving, he told her to tell Ebony "to love that n****r now."

In addition to the sisters' testimony, Appellant's girlfriend testified that after he failed to pick her up from work that evening, he called her and said, "I'm sorry; I'm sorry; I love you; I'm sorry." Also, Appellant's childhood friend testified that he knew Appellant owned a gun and had seen him with a gun before.

Viewing the evidence in the light most favorable to the verdict, we presume that the jury resolved any conflicts in the sisters' testimony and hold that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Accordingly, we overrule Appellant's sole point. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

## Conclusion

8

Having overruled Appellant's sole point, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 29, 2014

9